**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| v. | * | Case No. RDB-03-280 |
| **CRAIG DUSHAW HINES** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S SENTENCING MEMORANDUM**

Mr. Hines submits this Sentencing Memorandum in anticipation of his upcoming resentencing hearing on July 1, 2021. He urges the Court to reduce his sentence to time-served, which fits with the directives of 18 U.S.C. § 3553(a) that a sentence be sufficient, but not greater than necessary, to comply with the goals of sentencing.

**I.      Procedural History**

As this Court is aware, this matter was set for resentencing following Mr. Hines's motion to vacate his conviction under 18 U.S.C. § 924(c) in light of the Supreme Court's decisions in *Johnson v. United States*, 135 S. Ct. 2251 (2015), *United States v. Davis*, 139 S. Ct. 2319 (2019), and the Fourth Circuit's decision in *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020). *See* ECF Nos. 120, 121, 128, 129. On June 4, 2021, this Court granted Mr. Hines's motion, vacated his § 924(c) conviction on Count Six and ordered a resentencing. *See* ECF 131. The Government requested that the Court reconsider the June 4, 2021 order and Mr. Hines, through counsel, opposed. *See* ECFs 133, 135. On June 23, 2021, this Court signed a memorandum denying the motion for reconsideration. *See* ECF 136.

Mr. Hines was charged in a seven- count indictment in relation to a bank robbery which occurred on June 7, 2003 and an attempted bank robbery which occurred on June 11, 2003. *See* ECF 4, 122-2. On November 25, 2003, following a trial before this Court, Mr. Hines was

convicted of conspiracy to commit robbery, in violation of 18 U.S.C. § 371 (Count One), attempted bank robbery, in violation of 18 U.S.C. §§ 2113(a)&(d) (Count Five), possession of a firearm in furtherance of a "crime of violence" (specifically attempted bank robbery) in violation of 18 U.S.C. § 924(c) (Count Six), and felon in possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(g)(1). Mr. Hines was acquitted of all three counts related to the June 7, 2003 bank robbery.

A presentence report was prepared for Mr. Hines in preparation of his sentencing. For the attempted bank robbery, Mr. Hines has a base offense level of 20. PSR ¶ 25. Because of his § 924(c) charge, no points were assessed for the possession of a firearm. PSR ¶ 26. However, the presentence author found that Mr. Hines was a career offender based on three prior offenses, resulting in an offense of 34. PSR ¶ 31. A consecutive 25 years were required pursuant to § 924(c). PSR ¶ 32. In regards to his criminal history, Mr. Hines was assessed three points for a conviction out of the Eastern District of Virginia in 1993 for a slew of bank robberies in Maryland, another three points for a second conviction out of the Eastern District of Virginia at the same time as the first for a bank robbery in Virginia, and three points for storehouse breaking in the State of Maryland in 1993. PSR ¶¶ 38, 72, 74. This resulted in a criminal history category of IV. PSR ¶ 77. However, because he was assessed to be a career offender, his criminal history category was found to be VI. PSR ¶ 78.

Mr. Hines was sentenced before this court on March 31, 2004. Counsel for Mr. Hines opposed the career offender finding, noting that the first presentence report found that his convictions in the Eastern District of Virginia were originally listed as a single conviction, and that the conviction was only split into the two separate cases once the circuit law found that Maryland storehouse breaking was not a crime of violence for career offender purposes. ECF 61

at 10. Counsel argued that because the two Eastern District of Virginia cases were resolved with one plea agreement and involved similar conduct, they were related offenses and should have been considered a single offense pursuant to U.S.S.G. § 4A1.2(A). *Id*. at 34-36. After analyzing the factors in *United States v. Breckenridge*, 93 F.3d 132 (4th Cir. 1996), the Court determined that the two cases constituted two offenses and that Mr. Hines was a career offender. *Id.* at 53 – 55. The Court thus found calculated the guidelines at a level 34, criminal history category VI resulting in a range of 262 to 327 months. *Id.* at 65. However, with the mandatory minimum sentence required pursuant to § 924(c), the range at sentencing was 562 months to 627 months. *Id.* Mr. Hines was sentenced to 202 months as to Count Five, 60 months as to Count One, 120 months as to Count Seven, and 300 months as to Count Six. *Id.* at 66. Except for Count Seven, all counts were consecutive to each other, resulting in a total sentence of 562 months, or the low end of the guidelines range. *Id.*

The sentence in this case was imposed before the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005) that the sentencing guidelines were not mandatory.

**II.     A Reasonable Sentence in this Case**

In crafting a sentence, this Court should consult the guidelines, but is permitted to "tailor the sentence in light of other statutory concerns as well" with reference to the factors outlined in 18 U.S.C. § 3553(a). *United States v. Booker*, 125 S. Ct. 738, 757 (2005). The core requirement of § 3553(a) is that the Court impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2). Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of

the offense; to promote respect for law and to provide just punishment for the offense; to afford adequate deterrence; to protect the public from future crimes and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

In a case such as this one, where Mr. Hines returns to the court many years after his original sentencing, the Supreme Court has found that it is also necessary to examine how an individual has changed and grown during that time. *See Pepper v. United States*, 562 U.S. 476, 492-93 (2011) (explaining that, where a case has been remanded to the district court for resentencing, the court should consider evidence of a defendant's post-offense rehabilitation, which is "clearly relevant" to the history and personal characteristics of the defendant under 18 U.S.C. § 3553(a)(1) and the selection of an appropriate sentence). In this case, Mr. Hines's institutional record, medical issues, and family support weigh in favor of a time-served sentence.

### A. Facts and Circumstances of the Offense

Mr. Hines was convicted after trial of one count of conspiracy to commit bank robbery, attempted bank robbery, and felon in possession of a firearm in relation to an attempted bank robbery on June 11, 2003. According to the facts as laid out by the Government in the presentence report, the Montgomery County Police Department began surveilling Mr. Hines in June 2003. On three occasions prior to the attempted robbery, officers testified they saw Mr. Hines and co-defendant Mr. Kendricks Gladney, driving around the First Liberty National Bank in Oxon Hill, MD. On June 11, 2003, Mr. Hines and Mr. Gladney were arrested in the parking lot of the bank before an attempt was made. A mask and a revolver were located in Mr. Hines's car. At trial, Mr. Gladney testified against Mr. Hines. Mr. Gladney claimed that he and Mr. Hines had robbed a Farmer's Bank in White Plains, MD, but the jury found Mr. Hines not guilty as to that robbery.

### B.  The Guidelines Calculation

With the vacatur of the § 924(c) count, Mr. Hines guidelines are considerably lowered. To begin, without the 300-month mandatory sentence, his guidelines level is immediately lowered to 262 – 327 months.  Further, Mr. Hines is no longer a career offender In determining that the cases in the Eastern District of Virginia were to be considered two separate offenses, thus qualifying Mr. Hines as a career offender, the court relied on *Breckenridge,* a case decided in 1996. However, in 2007, the guidelines changed, "setting forth a more definitive test for assessing whether prior sentences are to be counted separately." *United States v. Rooks,* 596 F.3d 204, 212 (4th Cir. 2010). The modified guidelines state that if there are no intervening arrests between the offenses "prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." The presentence report lists May 6, 1993 as the date of the arrest for both case numbers 93-471 and 93-434. PSR at ¶ 38, 72. As such, there is no intervening arrest for the two cases.  In the Eastern District of Virginia case number 93- 434, Mr. Hines pled guilty on December 3, 1993, he was sentenced on February 4, 1994, and on April 19, 1995, his sentence was reduced pursuant to a motion from the government for a downward departure. *See* Exhibit 1. In the Eastern District of Virginia case number 93-471, Mr. Hines pled guilty on December 3, 1993, he was sentenced on February 4, 1994, and on April 19, 1995, his sentence was reduced pursuant to a motion from the government for a downward departure. *See* Exhibit 2. Based on the criteria as set forward in U.S.S.G. § 4A1.2(a)(2), because there was no intervening arrest and the sentences were imposed on the same day, the two offenses should count as a single offense.

Because the Eastern District of Virginia offenses should be considered a single offense under the sentencing Guidelines and because Maryland storehouse breaking is not a crime of

5

violence under the guidelines, Mr. Hines is not a career offender. Without a career offender finding, the base offense level is 20. PSR at ¶ 25. Because a gun was possessed, the offense level would increase by 5 points pursuant to § 2B3.1(b)(2)(C), resulting in a final offense level of 25. Because the Eastern District of Virginia matters are a single offense, they only count for a total of 3 points instead of 6. As such, with the Maryland storehouse breaking, Mr. Hines has 6 criminal history points for a criminal history category of III. As such, his guidelines range is 70 - 87 months.

### C. The History and Characteristics of the Defendant

Mr. Hines has been continuously detained in this case since June 11, 2003, a total period of 18 years or 216 months. While he has been incarcerated, Mr. Hines has remained productive. Mr. Hines has completed courses in conversational Spanish, small business, basic cleaning information, and re-entry and integration. *See* Exhibit 3 - BOP Records.[1] During the COVID-19 lockdown, Mr. Hines has begun additional, in cell programming as it is available. Additionally, Mr. Hines has regularly worked throughout his incarceration, holding positions in unit orderly, correctional services, safety, and laundry. *Id.* He has earned satisfactory work ratings from his supervisors during his entire period of confinement. *Id.*

Mr. Hines has not had a disciplinary infraction in over eight years. During this period of incarceration, he has only had three infractions, and none since he has been transferred to a medium facility. A fellow prisoner wrote a letter in support of Mr. Hines. *See* Exhibit 4 – Letter from Jerome Britton. Jerome Britton describes Mr. Hines as serving as a mentor to him for the

---

[1] Counsel is including the BOP records from 2019. Counsel has ordered the updated records but has not received them as of the date of this filing.

past three years. He describes Mr. Hines as someone who has a strong work ethic, who does work even when it is not required of him, and as leading other prisoners by example.

Mr. Hines is now 52 years old and suffers from hypertension, as well as pulmonary embolism.[2] While incarcerated, he contracted COVID-19. Due to his pulmonary embolism and issues with blot clots, Mr. Hines is unable at this time to take a COVID-19 vaccine. While the vaccination of other inmates can certainly slow the spread, because Mr. Hines cannot receive the vaccine, he is at an increased risk should he contract a dangerous variant of COVID-19.

### D. Family Support

Throughout his incarceration, Mr. Hines has maintained strong ties with his family members. Attached to this memorandum as Exhibit 5 are letters from family members and friends. What is apparent throughout is that Mr. Hines has remained a supportive father despite his incarceration and his hopes for release stem from his desire to make up for lost time with his children.

The first letter is from Regina Shepard, the mother of Mr. Hines's son Tyler. Ms. Shepard was unaware she was pregnant with Tyler until Mr. Hines had been incarcerated in this case and feared she would be raising a fatherless son. However, Mr. Hines has done everything he can to be a supportive father, giving Ms. Shepard weekly phone calls throughout her pregnancy and sending her support through family and friends. Tyler is now seventeen years old and Mr. Hines has continued to support him in the ways he can: weekly or daily phone calls, difficult conversations, gifts when possible. Tyler is an honor roll student graduating from high school a year early; he is a business own; he is a vegan and intensely passionate about animals and the

---

[2] Counsel has ordered and will provide this record upon receipt.

planet. Ms. Shepard credits Mr. Hines for passing on lessons and having conversations which have instilled values of maturity, patience, compassion and integrity in his son Tyler.

The second and third letters come from Yolanda Bagley-Matthews and their daughter Taiyla Hines. Mr. Hines too remained present in his daughter Taiyla's life despite his incarceration, frequently calling her and sending birthday and Valentine cards. His daughter, Taiyla, has obtained a cosmetology license, is a junior at Bowie State University majoring in business marketing, and dreams of one day opening a salon, perhaps with her father. Taiyla describes her father as a loving man who would give the shirt off of his back for someone who needed it. She hopes to partner up with her dad when he comes home to help him reintegrate into the community.

The fourth letter is written by Mr. Hines's son, Craig Dushay Glover Hines. Craig is now 29 years old, married and expecting his first child, and a second-year graduate student at Duke Divinity School. He reflects on the particular hardships his father has gone through in prison, notably grieving alone the loss of his parents and two of his siblings. Despite being only two when his father went to prison, Craig has maintained a relationship with his father and believes that his father has not only grown, but evolved. Craig, like his siblings, is not only excited by the prospect of his father coming home, but is determined to help his father make the transition out of prison.

Counsel has been in contact with Mr. Hines's brother, Phillip Hines, who resides in Glendale, MD. Phillip Hines, who has worked for UPS for the past 33 years, is willing to allow his brother to live with him once he is released. Mr. Hines's siblings, friends, and children are all willing and ready to welcome him back into the community and support him as he becomes a productive member of society.

### E. Avoiding Unwarranted Disparities

A sentence of time-served would help avoid unwarranted disparities. Mr. Hines's co-defendant in the case, Kendricks Gladney, who planned the bank robbery with him and who testified against him at trial, received a total sentence of 123 months. *See* ECF 53. The 123-month sentence was set to run concurrent to case RBD-03-521, in which Mr. Gladney pled guilty to the distribution of crack cocaine. Mr. Gladney was released from the Bureau of Prisons on January 31, 2012. While counsel recognizes that Mr. Gladney should receive credit for his cooperation with the Government both in the present case and in his crack distribution case, a sentence for Mr. Hines that is more than double that received by Mr. Gladney would create an unwarranted disparity.

A sentence of time-served is also more in line for what similarly situated defendants in this District would receive today. For example, in May 2021, Judge Russell sentenced a defendant who committed nine bank robberies and attempted robberies *while he was on supervised release for federal bank robbery charges* to 150 months in federal prison. *See United States v. Fletcher Dorsett*, Crim No. GLR-19-546, ECF Nos. 27, 39 (D. Md.). The defendant in that case had passed notes claiming to have a gun to tellers at nine different banks.

### III. Conclusion

Mr. Hines has been continuously incarcerated in relation to these charges since June 11, 2003, a total period 18 years or 216 months. With good time credit, his time is closer to 244 months. This is a sentence which is three times greater than the now applicable guidelines range. For the reasons stated *supra,* a sentence of time-served is sufficient but not greater than necessary to fulfil the goals of sentencing.

Respectfully submitted,

_____/s/_____
Gary E. Proctor (Bar No. 27936)
Jennifer E. Smith (Bar No. 20767)
The Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
(410) 444-1500 (tel.)
(443) 836-9162 (fac.)

*Attorneys for Defendant.*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, June 24, 2021, a copy of the foregoing was served on Government counsel via email.

_____/s/_____
JENNIFER E. SMITH